Caruthers, J.,
delivered the opinion of the Court.
The defendant in error brought his suit against the plaintiff in error on this note:
“We or either of us promise to pay Arnold Thoma-son on the 25th December, 1853, thirty dollars, for value received of him. As witness our hands and seals this November 22, 1852. F. Kire,
Samuel Crooeett.”
*343 The defense by Crockett is a special plea of non est factum, based upon the alteration of the time of payment from 25th December, 1854, to 1853, without his knowledge or consent.
Norman A. Narden, who was acting as agent for Thomason in this matter, states the facts succinctly as follows:
“Franklin Kirk brought a note to me payable to Arnold Thomason, for thirty dollars, with his and Samuel Crockett’s names signed to it, made payable and due 25th December, 1854, and dated November 1852. I told Kirk he must alter the date of said note to fulfil a contract that I had with Arnold Thomason; and Kirk said he would do so, and he took a pen and ink and sat down for that purpose, and got up and handed said note to me with a figure 3 over a figure 4 in the date of said note.” He means the alteration was made in the time of payment. The object of this note was to discharge a judgment which Thomason then had against Kirk, with the witness, Narden, stayor. It was agreed by Thomason, that if Kirk would give him a note with Crockett, or some other good security, it should go in discharge of the judgment, and Narden says he was acting as agent for Thomason in getting the note.
The Judge charged, “ that if the change of the note was by Kirk, the principal maker, in the presence, and by the direction of Narden, still it would be valid as it was originally made, and the plaintiff would have a right to recover upon it, unless they should find that said note had been altered by the payee or some other *344 holder of the note, in which last event he would not be entitled to recover.” The verdict was for the plaintiff.
Was this charge correct, and if so, was the verdict in conformity to it, in reference to the facts proved?
A writing is the highest evidence and the sole repository of the agreement of the parties to it. Its legal virtue is so great, that it cannot be changed, altered and enlarged, or restricted by parol. It is the only admissible evidence of the facts it contains, and the agreements embraced. This alone would suggest the necessity of the most rigid rules against any unauthorized changes in its terms, and for the preservation of its purity. It need hardly be stated that changes made at the time or afterwards,, with the assent of the parties, do not affect the writing.
The general proposition is now well established, that any alteration of an instrument by the party entitled under it, by which its legal effect is changed, renders it void. 1 Green. Ev., 565, 566; Addison on Con., 1084. Whether an immaterial alteration, by the obligee himself, would have the same effect, is left in some doubt by the authorities. If fraudulently done, it certainly would be fatal, but if innocently done and productive of no injury, perhaps it would not. Ib., 568. The insertion of words which the law would imply, is not an alteration, in the legal sense, and will not vitiate the instrument. Ib., 567; Blair vs. Bank of Tennessee, 11 Humph., 85.
The mutilation of instruments by a stranger is termed spoliation, as contradistinguished from alteration, as above explained, and is very different in its consequences and effects; and so is mutilation by accident. If by these *345 last modes tbe instrument is so defaced or changed as to lose its identity, it would be merely the destruction of the primary, as in the case of the loss of a paper, compelling the party to resort to secondary evidence.
Rut in the case before us the change is in a material part; it is in the day of payment, and accelerates it one year, and is, therefore fatal, if done by the obligee, for that would make it an alteration, in the legal sense, according to all the authorities. It was not done by his own hand, or the hand of his agent; but it was done by Kirk, under the direction of the agent, without the presence or knowledge of Crockett, or any subsequent sanction, or ratification by him. This alteration, then, in its legal effects, is the same as if made by the obligee himself.
Rut it is contended, and such was the opinion of the Circuit Judge, that the instrument was still good in its original form, in which it is declared upon. That would be so, if the alteration when detected could only be regarded as a nullity. Rut Mr. Greenleaf, 1 vol., §. 565, adopting the case of Masters vs. Miller, 1 Smith’s Leading Cases, 466, and notes, says, “ the grounds of this doctrine are two-fold. The first, is that of public -policy, to prevent fraud by not permitting a man to take the chance of committing a fraud, without running the risk of losing by the event, when it is detected; the other, is to insure the identity of the instrument, and prevent the substitution of another without the privity of the party concerned.” It is to operate as a penalty upon the holder, as well as protection to the other party. It imports a fraud in law, whether' so intended or not, and even if no injury is done, and the change abandoned *346 by tbe party, in whose favor it was intended to operate, the consequence, upon strong grounds of policy and settled rules of law, is the same.
The note is, therefore, void as to Crockett, but not as to Kirk, and no suit can be founded upon it against defendant Crockett, and so the jury should have been explicitly instructed, if the proof, in the opinion of the jury, made out a case of alteration, as herein explained.
Judgment reversed and new trial granted.